

**Your Missouri Courts** .net

Search for Cases by: Select Search Method... ▼

Judicial Links | eFiling | Help | Contact Us | Print    GrantedPublicAccess Logoff FOWLERTG10

18BA-CV05030 - CAROLE AMES V INTEGRITY HOME CARE (E-CASE)

| Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution |

This information is provided as a service and is not considered an official court record.

Click here to eFile on Case
Click here to Respond to Selected Documents

Sort Date Entries: ● Descending ○ Ascending    Display Options: All Entries ▼

**12/07/2018**

☐ **Summons Issued-Circuit**
Document ID: 18-SMCC-1698, for INTEGRITY HOME CARE. Attorney to print two copies of summons for service. (tg)

☐ **Filing Info Sheet eFiling**
(tg)
    **Filed By:** ANDRE EUGENE TOWNSEL

☐ **Pet Filed in Circuit Ct**
Petition. (tg)
    **On Behalf Of:** CAROLE AMES

☐ **Judge Assigned**

# IN THE THIRTEENTH JUDICIAL CIRCUIT COURT OF MISSOURI
## BOONE COUNTY

| | |
|---|---|
| CAROLE AMES ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. |
| INTEGRITY HOME CARE, INC. ) | |
| ) | |
| Defendant. ) | JURY TRIAL DEMANDED |

## PETITION

COMES NOW Plaintiff, Carole Ames, by and through her counsel of record, and complaining of the Defendant, INTEGRITY HOME CARE, INC., as follows:

### JURISDICTION AND VENUE

1. This action is brought pursuant to the Missouri Human Rights Act, the Family and Medical Leave Act, and under the common law of the State of Missouri.

2. This Court has jurisdiction of this action, conferred under RSMo. § 213.111, 29 U.S.C. § 2617(a)(2) and this Court's general jurisdiction to hear civil tort matters.

3. Venue is proper in this Court because Defendant has operations in Boone County, Missouri, and the unlawful employment actions alleged herein occurred within Boone County.

### PARTIES

4. At all times relevant to this litigation, Plaintiff Carole Ames ("Ames," formerly Crismaru) was a resident of Huntsville, Missouri.

5. At all times relevant to this litigation, Plaintiff Ames was an "Eligible Employee" as defined by 29 U.S.C. § 26119(2)(A).

6. At all times relevant to this litigation, Defendant, INTEGRITY HOME CARE, INC. ("Integrity" or "Defendant") was a Missouri corporation with its principal place of business located at 2960 N. Eastgate Ave., Springfield, Missouri.

7. At all times relevant to this litigation, Integrity was a home health care provider with locations throughout Missouri.

8. Integrity is an employer as defined by RSMo § 213.010(8).

9. Integrity is a covered employer as defined by 29 U.S.C. § 2611(4)(A)(i).

## ADMINISTRATIVE PROCEDURE

10. On or about August 25, 2017, Plaintiff filed charges of discrimination as a continuing violation based on disability, retaliation and harassment against Defendant with the Missouri Commission on Human Rights (MCHR Charge No. E-08/17-48596), which was cross-filed with the U.S. Equal Employment Opportunity Commission (EEOC Charge No. 28E-2017-01651).

11. That Charge was filed within 180 days of the acts complained of in this action.

12. On September 12, 2018, the MCHR issued a right-to-sue notice which was received by Plaintiff on September 15, 2018 (attached hereto as Exhibit A). This lawsuit is filed within 90 days of the date of that right-to-sue notice.

## FACTS

13. Plaintiff Ames began her employment with Integrity on or about June 27, 2011.

14. During her employment Ames worked as the Director of Operations–Home Health and as a Clinical Manager at 905 Safari Drive, Suite 205 in Columbia, Missouri.

15. Plaintiff met, and often exceeded, the legitimate performance expectations of her employer.

2

16. One of Plaintiff's supervisors described Ames as "above par, a very intelligent and hard-working woman."

17. Plaintiff's coworkers describe Ames as a very conscientious person who follows the Missouri Nurse Practice Act and does the right thing for patients and clients.

18. Ames' residence is approximately 41 miles from Integrity's Columbia office.

19. As Clinical Manager for the Columbia office, Ames was required to travel to various locations to manage the duties and responsibilities of her position.

20. When Ames accepted the position of Clinical Manager she was assured by Paul Reinert, Integrity Chairman, that she would have a company vehicle as part of her position.

21. Ames was assigned a company vehicle as a benefit and part of Ames' compensation. Ames and had no other reliable form of transportation suitable for work.

22. Beginning on or about April, 2014 Ames reported to and was supervised by Jennifer Williamson ("Williamson"), Regional Manager.

23. Williamson has been described by those working with her as "a bully, erratic, paranoid, and high as a kite."

### Williamson's Discrimination and Harassment

24. On or about March 23, 2016, coworker, Tracey Horton, expressed concerns to Ames about the possibility that Williamson was having an affair with Tracey's husband.

25. On or about October 2016, Tracey came to Ames' office crying uncontrollably, arms waiving and explaining hysterically that Williamson had confronted her about Williamson's relationship with her husband.

26. Immediately thereafter, Tracey stormed out of the office and abruptly resigned. Tracey left so quickly that she left all of her personal belongings on the premises and never returned.

27. Williamson's conduct in her various roles with Integrity constitutes a pattern and practice of creating a hostile working environment, discrimination, retaliation, and bullying.

28. Marylyn Brenneman, an employee with health issues and perceived as disabled by Williamson, requested a medical leave of absence.

29. Following this request, Williamson told Ames that Marilyn was "too old" and that she wanted "Marilyn out," meaning that she wanted to terminate Marilyn's employment with Integrity.

30. Williamson directed that an increased amount of work be "piled" on Marilyn with unreasonable deadlines.

31. Ames attempted to mitigate the effect of Williamson's discriminatory actions by helping Marilyn with some of the increased workload.

32. Williamson directed that Marilyn be placed on a performance improvement plan ("PIP").

33. In Ames' opinion, Marilyn completed the PIP with "flying colors."

34. Soon thereafter, Williamson terminated Marilyn under the pretext that her position was being eliminated. However, Marilyn's position was retained in every other location where the position was held.

35. Not long after Marilyn's termination, Williamson told Ames that she wanted to reinstate the position formerly held by Marilyn.

4

36. Ames expressed her opinion that it was improper to reopen the position after terminating Marilyn who had performed the job satisfactorily.

37. Veteran, Augustus Craig ("Gus") was an employee with physical disabilities who requested a medical leave of absence.

38. Ames participated in several meetings with Williamson where Williamson expressed her desire to terminate Gus.

39. Ames observed Williamson take actions to systematically push Gus out of his job.

40. Williamson separated Gus from his co-workers by relocating him to an unoccupied part of the building where there were no workspaces.

41. Williamson asked specific employees to watch Gus more closely and to find reasons to discipline Gus.

42. Williamson requested a breakdown of everything Gus did and how long it took him to perform work.

43. Williamson added more duties and responsibilities to Gus' position, only to then micro-manage and harass him for alleged performance issues.

44. Gus submitted a resignation letter on or about January 5, 2017, citing the stressful work environment and newly created expectations. Gus' expressed that his workload was unreasonable and that Williamson created a discriminatory work environment.

45. Gus was hospitalized immediately after his resignation and passed away soon thereafter.

46. Daniel Lindner was a disabled employee who utilized medical leave.

47. Williamson expressed her dislike of Daniel stating that she needed someone "able bodied" to perform marketing work.

48. Williamson recruited another employee, Aimee McCloud in Integrity's Marketing department, to harass and intimidate Daniel, literally fabricating problems and concerns about Daniel.

49. Williamson requested a copy of the performance review that Ames completed for Daniel which was favorable.

50. Williamson changed Daniel's performance review to falsely degrade his evaluation to show that Daniel performed worse than he actually did.

51. Ames' reported this discriminatory conduct to Mindy Stewart, Vice President, who, after investigation, agreed with Ames and attempted to stop the campaign of harassment initiated by Williamson.

52. Susan Hoellering, Service Line Coordinator, reported her chemical dependency to a social worker Bridget Price, and requested a medical leave to seek recovery from her condition.

53. Immediately after learning of Susan's condition and request, Williamson terminated Susan instead of notifying Susan of her leave eligibility as required by law.

54. Williamson engaged in additional acts of discrimination against individuals who exercised their right to take medical leave under the FMLA.

55. Williamson engaged in additional acts of discrimination against individuals who were disabled, were perceived as disabled or had a record of disability.

56. Ames was diagnosed with Depression and Adjustment Disorder.

57. On or about Friday, November 25, 2016, Ames met with Whitney Burns, Director of Human Resources, to request intermittent FMLA for her serious medical condition.

58. Burns verbally approved Ames' requested leave on that date and informed Ames that she would notify Williamson about Ames' request for leave. Ames' request for leave was later approved in writing.

59. On Monday, November 28, 2016, Williamson met with Ames during which she discussed Ames' request for medical leave.

60. During that meeting Williamson fabricated new allegations concerning Ames' work performance and made changes to increase Ames' workload.

61. During that same meeting, Williamson informed Ames that she was cancelling Ames' use of her assigned company car, an essential element of Ames' position.

62. Just a few days earlier, Williamson sent a memo to her staff notifying them that there were too many company cars not being utilized enough.

63. Knowing that Ames' had no other form of reliable transportation, Williamson told Ames that she would have to buy another car within 30 days. Williamson knew Ames' plans for a home purchase and knew the financial hardship her unwarranted decision would cause Ames.

64. Williamson requested a list of all of Ames' duties and responsibilities, which Ames provided. Ames personally observed Williamson make this same request of other employees who Williamson planned to terminate.

65. Immediately after learning that Ames' required intermittent medical leave, Williamson mandated a new work schedule for Ames without regard for Ames' protected rights under the law.

66. On or about December 2, 2016, Williamson demanded that Ames stand in the middle of the room during general office meetings.

7

67. On a prior occasion, Ames personally observed Williamson harass another employee, Melissa Strodtman, by demanding that she get out of her chair in the middle of a meeting to move to a certain spot, and other petty and annoying tactics.

68. At that time, Williamson had confided in Ames that she wanted to push Melissa out of her job and hoped that she could get Melissa to quit. Ames observed the same harassing tactics being used against her as had been used on Melissa and others.

69. Williamson engaged in active surveillance of Ames by literally stalking Ames throughout the day. Whether Ames was in her office, or in a conference room meeting with others, Williamson would peer in to see who Ames was meeting with and move on. Never were Williamson's multiple interruptions for the purpose of conducting business.

70. Williamson's conduct created a severe or pervasive hostile work environment.

71. On December 5, 2016, Ames submitted a formal complaint to Whitney Burns, Director of Human Resources, "for inappropriate treatment that constitutes workplace bullying, intimidation, retaliation, and FMLA interference."

72. On or about December 14, 2016, Ames met with Burns to discuss her formal complaint and to request a reassignment to another supervisor or department. Without consideration or investigation, Burns immediately denied Ames' request for reassignment.

73. Ames was aware of at least two positions within the company for which she was qualified.

74. On or about January 10, 2017, Williamson requested that Ames conduct a time study on all of her work activities. Ames personally observed Williamson make this same request of others she planned to terminate, only to use the information as a pretext for discrimination and harassment.

75. On or about March 9, 2017, Ames received a call from Lynn Rogers, Supply Manager, explaining that Robin Gladwell, Executive Director, came to Lynn's office to express a number of concerns. Lynn asked Ames to give Robin Gladwell a call.

76. The next day, Ames called Robin Gladwell as requested.

77. During the March 10, 2017, discussion with Robin Gladwell, Gladwell described to Ames multiple complaints of discrimination and harassment that she received about Williamson.

78. Gladwell asked Ames whether she also had experienced any discrimination or harassment by Williamson.

79. Ames acknowledged that she had, in fact, experienced bullying, retaliation, harassment and discrimination by Williamson, and had filed a formal complaint against Williamson on December 5, 2016.

80. Later that day, Ames was called into a meeting with Williamson and a newly hired human resource manager, Chasyn Chamberlain, who told Ames "today is your last day. Based on your conversation with Robin this morning you are being terminated today."

81. Ames told Chasyn that she had filed a complaint on December 5, against Williamson, and that she had 120 hours of vacation time to which she was entitled.

82. Ames was terminated that day.

83. Integrity, by its agents and employees exhibited a knowing, callous and reckless disregard for Ames' protected rights under the law.

### Ames' Complaints of Unlawful Conduct

84. On or about April 1, 2016, Ames complained to Williamson about Integrity's home health department not having an on-call back up for a catheter patient, which is a regulatory violation.

9

85. On or about June 1, 2016, Ames complained to Becky Cook, Home Health Compliance Officer, about a home health IV patient's late admission, which is a regulatory violation.

86. On or about June 3, 2016, Ames complained to Hilary Wilson, Home Health Branch Manager about recurring issues regarding medication documentation for shared clients.

87. On or about June 9, 2016, Ames complained to Mindy Stewart about how poorly the agency was being run, client concerns, and unfair treatment towards employees.

88. On or about July 13, 2016, Williamson told Ames not to contact the Human Resources Department any more about employee-related issues but to go through her (Williamson) instead.

89. On or about July 15, 2016, Ames reported to Hillary Wilson that home health staff refused to pick up a shared client having open wounds.

90. On or about September 1, 2016, Ames complained to Mindy Stewart about unfair and unlawful treatment by Williamson towards employees and client dissatisfaction.

91. On or about October 6, 2016 Ames met with Williamson to discuss declining business, low employee morale and clients leaving.

92. On or about November 1, 2016 Ames informed Williamson of a regulatory violation regarding APC clients.

93. On or about November 17, 2016, Ames provided Williamson with copy of state regulations, and the Missouri Nurse Practice Act.

94. On or about February 22, 2017, Ames complained to Becky Cook about a home health regulatory violation relating to a post hospitalization assessment not being performed for

several days in a life-threatening situation and directed that a hotline call be placed to the proper authorities.

95. Within a few weeks of reporting the regulatory violations and call to the proper authorities, Ames was terminated.

## COUNT I – RSMo. § 213.111 DISPARATE TREATMENT

96. Plaintiff incorporates by this reference the allegations stated in paragraphs 1 through 95 in this Count as if fully stated herein.

97. Ames had a disability, was regarded as disabled by her employer or had a record of disability;

98. Ames was qualified to perform her job with or without a reasonable accommodation, and her disability did not interfere with her job performance;

99. Defendant Integrity subjected Ames to a hostile work environment, failed to reassign Ames or take other remedial action, and treated Ames differently in the terms and conditions of her employment;

100. Ames disability actually played a role in and had a determinative influence on Defendant's discriminatory conduct towards Ames;

101. Ames sustained damage.

WHEREFORE, the Plaintiff respectfully requests that this Court:

Enter judgment against Defendant Integrity Home Health Care and in favor of Plaintiff in an amount exceeding $30,000 or whatever sum meets the jurisdictional limit for filing in the Circuit Court of Boone County, Missouri, comprised of actual damages and back pay, front pay and compensatory damages as will fairly and justly compensate Plaintiff for her losses including, but not limited to, economic losses, inconvenience, humiliation, emotional distress, pain and

suffering, mental anguish, loss of enjoyment of life and other non-economic losses, punitive damages, reasonable attorney's fees, the costs and expenses of this action and such further legal and equitable relief as this Court deems appropriate.

## COUNT II – RSMo. § 213.111 RETALIATION

102. Plaintiff incorporates by this reference the allegations stated in paragraphs 1 through 101 in this Count as if fully stated herein.

103. Plaintiff was employed by Defendant Integrity;

104. Plaintiff engaged in protected conduct by complaining of harassment, retaliation, and discrimination, and by participating in an interview or investigation of discriminatory behavior;

105. Defendant Integrity discharged Plaintiff;

106. Plaintiffs protected conduct actually played a role in and had a determinative influence on Plaintiff's discharge;

107. Such discharge directly caused damage to Plaintiff.

WHEREFORE, the Plaintiff respectfully requests that this Court:

Enter judgment against Defendant Integrity Home Health Care and in favor of Plaintiff in an amount exceeding $30,000 or whatever sum meets the jurisdictional limit for filing in the Circuit Court of Boone County, Missouri, comprised of actual damages and back pay, front pay and compensatory damages as will fairly and justly compensate Plaintiff for her losses including, but not limited to, economic losses, inconvenience, humiliation, emotional distress, pain and suffering, mental anguish, loss of enjoyment of life and other non-economic losses, punitive damages, reasonable attorney's fees, the costs and expenses of this action and such further legal and equitable relief as this Court deems appropriate.

12

## COUNT III – FMLA INTERFERENCE

108. Plaintiff incorporates by this reference the allegations stated in paragraphs 1 through 107 in this Count as if fully stated herein.

109. Plaintiff Ames was eligible for leave;

110. Plaintiff Ames had a serious health condition;

111. Plaintiff Ames attempted to take a leave because of that serious health condition;

112. Plaintiff Ames gave the defendant timely notice of her need to take intermittent leave;

113. Defendant Integrity interfered with Ames' right to take leave by imposing a new work schedule;

114. Plaintiff Ames was not able to take the intermittent leave as scheduled because of Defendants interference with taking the leave;

115. Ames sustained damage.

WHEREFORE, the Plaintiff respectfully requests that this Court enter an order granting Ames the lost wages and benefits she would have received but for Defendant's conduct and actual monetary losses sustained by Plaintiff.

## COUNT IV – FMLA DISCRIMINATION

116. Plaintiff incorporates by this reference the allegations stated in paragraphs 1 through 115 in this Count as if fully stated herein.

117. Plaintiff Ames engaged in an activity protected by the FMLA;

118. Plaintiff Ames suffered a materially adverse employment action;

119. A causal connection existed between Ames activity and Defendant's adverse action;

120. Ames sustained damage.

WHEREFORE, the Plaintiff respectfully requests that this Court enter an order granting Ames the lost wages and benefits she would have received but for Defendant's conduct and actual monetary losses sustained by Plaintiff.

## COUNT V – FMLA RETALIATION

121. Plaintiff incorporates by this reference the allegations stated in paragraphs 1 through 120 in this Count as if fully stated herein.

122. Plaintiff Ames was eligible for leave;

123. Plaintiff Ames had a serious health condition;

124. Plaintiff Ames took intermittent leave because of that serious health condition;

125. Plaintiff Ames gave the Defendant timely notice of her need to take intermittent leave;

126. Defendant Integrity discharged Ames;

127. Plaintiff Ames' use of intermittent leave was a motivating factor in Defendant's decision to discharge Plaintiff;

128. Ames sustained damage.

WHEREFORE, the Plaintiff respectfully requests that this Court enter an order granting Ames the lost wages and benefits she would have received but for Defendant's conduct and actual monetary losses sustained by Plaintiff.

## COUNT VI – WRONGFUL DISCHARGE

129. Plaintiff incorporates by this reference the allegations stated in paragraphs 1 through 128 in this Count as if fully stated herein.

130. Plaintiff Ames reported violations of law to superiors or third parties;

131. Defendant Integrity discharged Plaintiff;

132. Such conduct of Plaintiff in reporting violations of law actually played a role in and had a determinative influence on Plaintiff's discharge;

133. As a direct result of Plaintiff's discharge, she sustained damage.

WHEREFORE, the Plaintiff respectfully requests that this Court:

Enter judgment against Defendant Integrity Home Health Care and in favor of Plaintiff in an amount exceeding $30,000 or whatever sum meets the jurisdictional limit for filing in the Circuit Court of Boone County, Missouri, comprised of actual damages and back pay, front pay and compensatory damages as will fairly and justly compensate Plaintiff for her losses including, but not limited to, economic losses, inconvenience, humiliation, emotional distress, pain and suffering, mental anguish, loss of enjoyment of life and other non-economic losses, punitive damages, reasonable attorney's fees, the costs and expenses of this action and such further legal and equitable relief as this Court deems appropriate.

Respectfully submitted,

CAROLE AMES

By: /s/ Andre E. Townsel, Mo Bar # 44639
TOWNSEL LAW FIRM
1701 East Woodfield Road
Suite 900
Schaumburg, IL 60173
(312) 772 5850
(312) 278 0070
ATTORNEY FOR PLAINTIFF



MISSOURI DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS
# MISSOURI COMMISSION ON HUMAN RIGHTS

| MICHAEL L. PARSON<br>GOVERNOR | ANNA S. HUI<br>DEPARTMENT DIRECTOR | Melody A. Smith, Ed.D.<br>ACTING COMMISSION CHAIRPERSON | ALISA WARREN, PH.D.<br>EXECUTIVE DIRECTOR |

Carole Crismaru
1003 County Road 2170
Huntsville, MO 65259

RE: Carole Crismaru vs. INTEGRITY HOME CARE, INC.
E-08/17-48596  28E-2017-01651C

The Missouri Commission on Human Rights (MCHR) is terminating its proceedings and issuing this notice of your right to sue under the Missouri Human Rights Act because you have requested a notice of your right to sue.

You are hereby notified that you have the right to bring a civil action within 90 days of the date of this letter against the respondent(s) named in the complaint. Such an action may be brought in any state circuit court in any county in which the unlawful discriminatory practice is alleged to have occurred, either before a circuit or associate circuit judge. Not only must any action brought in court pursuant to this right to sue authorization be filed within 90 days from the date of this letter, any such case must also be filed **no later than two years after the alleged cause occurred** or your reasonable discovery of the alleged cause.

**IF YOU DO NOT FILE A CIVIL ACTION IN STATE CIRCUIT COURT RELATING TO THE MATTERS ASSERTED IN YOUR COMPLAINT WITHIN 90 DAYS OF THE DATE OF THIS NOTICE (AND WITHIN TWO YEARS OF THE ALLEGED CAUSE, OR THE DISCOVERY OF THE ALLEGED CAUSE, OF YOUR COMPLAINT), YOUR RIGHT TO SUE IS LOST.**

You are also notified that the Executive Director is administratively closing this case and terminating all MCHR proceedings relating to your complaint. You may not reinstate this complaint with the MCHR or file a new complaint with the MCHR relating to the same act or practice, but rather, if you choose to continue to pursue your complaint, you must do so in court as described in this letter. This notice of right to sue has no effect on the suit-filing period of any federal claims.

This notice of right to sue is being issued as required by Section 213.111.1, RSMo, because it has been requested in writing 180 days after filing of the complaint. **Please note that administrative processing of this complaint, including determinations of jurisdiction, has not been completed.**

In addition to the process described above, if any party is aggrieved by this decision of the MCHR, that party may appeal the decision by filing a petition under § 536.150 of the Revised Statutes of Missouri in state circuit court. Any such petition must be filed in the circuit court of Cole County.

Respectfully,

Alisa Warren, Ph.D.
Executive Director

September 12, 2018
Date

C: additional contacts listed on next page

| ☒ | ☐ | ☐ | ☐ | ☐ |
| 3315 W. TRUMAN BLVD.<br>P.O. BOX 1129<br>JEFFERSON CITY, MO 65102-1129<br>PHONE: 573-751-3325<br>FAX: 573-751-2905 | 111 N. 7TH STREET, SUITE 903<br>ST. LOUIS, MO 63101-2100<br>PHONE: 314-340-7590<br>FAX: 314-340-7238 | P.O. BOX 1300<br>OZARK, MO 65721-1300 | 1410 GENESSEE, SUITE 260<br>KANSAS CITY, MO 64102<br>FAX: 816-889-3582 | 106 ARTHUR STREET<br>SUITE D<br>SIKESTON, MO 63801-5454<br>FAX: 573-472-5321 |

*Missouri Commission on Human Rights is an equal opportunity employer/program. Auxiliary aides and services are available upon request to individuals with disabilities.*
TDD/TTY: 1-800-735-2966 (TDD)  Relay Missouri: 711
www.labor.mo.gov/mohumanrights  E-Mail: mchr@labor.mo.gov

Exhibit A



# IN THE 13TH JUDICIAL CIRCUIT, BOONE COUNTY, MISSOURI

| Judge or Division:<br>J. HASBROUCK JACOBS | Case Number: 18BA-CV05030 | |
|---|---|---|
| Plaintiff/Petitioner:<br>CAROLE AMES<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>ANDRE EUGENE TOWNSEL<br>1701 EAST WOODFIELD ROAD<br>SUITE 900<br>SCHAUMBURG, IL 60173 | |
| Defendant/Respondent:<br>INTEGRITY HOME CARE | Court Address:<br>705 E Walnut<br>COLUMBIA, MO 65201 | |
| Nature of Suit:<br>CC Employmnt Discrmntn 213.111 | | (Date File Stamp) |

## Summons in Civil Case

**The State of Missouri to:** INTEGRITY HOME CARE
**Alias:**
905 SAFARI DRIVE
SUITE 105
COLUMBIA, MO 65202

**COURT SEAL OF BOONE COUNTY**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

____12/07/2018____  ____/s/Tammy Grimes____
Date                    Clerk

Further Information:

### Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within 30 days after the date of issue.
I certify that I have served the above summons by: (check one)
☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.
☐ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to: _____ (name) _____ (title).
☐ other: _____.

Served at _____ (address)
in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____          _____
Printed Name of Sheriff or Server          Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**
Subscribed and sworn to before me on _____ (date).
(Seal)
My commission expires: _____     _____
                        Date                    Notary Public

**Sheriff's Fees, if applicable**
Summons           $_____         BCSD FEE NOT PAID.   ATTORNEY TO PAY
Non Est           $_____         BCSD DIRECTLY.
Sheriff's Deputy Salary
Supplemental Surcharge   $___10.00___
Mileage           $_____  (_____ miles @ $._____ per mile)
**Total**         $_____

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (06-18) SM30 (SMCC) *For Court Use Only:* **Document Id # 18-SMCC-1698**   1 of 1   Civil Procedure Form No. 1; Rules 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Case 2:19-cv-04011-NKL   Document 1-1   Filed 01/18/19   Page 18 of 18